# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is
made as of September 23, 1996 by and between the Board of
Trustees of the District 65 Pension Plan (the "Plan") and
DeMarco California Fabrics Inc.          (the "Company")
and all of the trades or businesses under common control
with the Company as the term "common control" is used in
Section 4001(b) of the Employee Retirement Income Security
Act of 1974, as amended ("ERISA") and Section 414(b) and (c)
of the Internal Revenue Code of 1986, as amended (the
"Code") to the extent they are jointly and severally liable
to the Plan for the Company's minimum funding and/or
withdrawal liability under ERISA and/or the Code and are
under "common control" with the Company as of the date of
this Agreement (collectively, the "Employer")).

WHEREAS, the Plan alleges that Employer owes the
Plan withdrawal liability, mass withdrawal liability, and a
share of the Plan's minimum funding deficiency for plan
years ending on or before January 31, 1995;

WHEREAS, the Employer contests the Plan's
allegations of such liabilities in material respects; and

WHEREAS, the Plan and Employer wish to fully settle and satisfy all claims they may have against each other in connection with the Company's participation in and termination of participation from the Plan;

NOW, THEREFORE, in consideration of the covenants and conditions set forth herein, the parties, intending to be legally bound, agree as follows:

1.   The Employer's obligation for withdrawal liability, mass withdrawal liability and a share of the Plan's minimum funding deficiency ("Minimum Funding Deficiency") shall be satisfied by payment of either a lump sum as set forth in paragraph 2, installment payments as set forth in paragraph 3, a combination thereof as set forth in paragraph 4 or a hardship settlement pursuant to paragraph 8, but each of these alternatives is subject to Employer's right to challenge and receive an adjustment in withdrawal liability and Minimum Funding Deficiency obligations pursuant to paragraphs 6 and 7.  The calculation of the Employer's withdrawal liability and Minimum Funding Deficiency under this Agreement shall be made in accordance with the provisions of this Agreement and, to the extent not inconsistent herewith, the provisions of the Final Settlement Term Sheet or, if applicable, the Special Settlement Term Sheet.  On or before September 6, 1996, the

2

withdrawal liability and Minimum Funding Deficiency obligations by making quarterly installment payments over twenty years. The interest rate charged to Employers that choose to pay their liability over twenty years shall be 8% compounded annually. The quarterly payments shall be in the amount set forth on line B8 of Exhibit B. Exhibit B sets forth the manner in which these sums were calculated, including the applicable assumptions. The first quarterly payment under the Twenty Year Payment Option shall be received by the Plan on or before September 23, 1996. Subsequent quarterly payments shall be received by the Plan on or before each December 15, March 15, June 15 and September 15 until Employer has satisfied its obligation hereunder.

4. <u>Modified Installment/Partial Lump Sum Payment Option</u>. The Employer may fully and completely satisfy its withdrawal liability, mass withdrawal liability, and Minimum Funding Deficiency obligations by making quarterly payments for a period of less than twenty (20) years, or by paying its withdrawal liability in a partial lump sum with the remainder of that liability and the Minimum Funding Deficiency paid off in twenty (20) years or less, calculated in accordance with Section C of Exhibit B. The interest rate charged to Employers that choose to satisfy their obligations in installments for a period of less than twenty

4

(20) years shall be 8% compounded annually.  If the Employer
intends to satisfy its obligations as provided in this
paragraph 4, the Employer shall state on Exhibit A the
amount it intends to pay in a partial lump sum, if any, and
the number of quarterly payments it intends to make to
satisfy its obligations.  The Employer shall return the
completed Exhibit A to the Plan by telecopy on or before
September 23, 1996.  The Plan will then complete the
applicable parts of Section C of Exhibit B and return it to
the Employer by telecopy, on or before September 30, 1996.
The Employer may then choose to amend or revise its Exhibit
A as set forth below; provided, however, that the Plan shall
receive on or before September 23, 1996, the Employer's
completed and executed Agreement, and, at a minimum, the
first quarterly payment as calculated under the Twenty Year
Payment Option.  On or before September 30, 1996, the Plan
will provide the Employer with information regarding
alternative payment schedules as reasonably requested by the
Employer and permitted under this Agreement, which shall be
adjusted to reflect all payments previously made and
indicate the amount of interest (for the period from
September 23 through October 10, 1996, at 8% compounded
annually) payable with respect to the differential between
the payment made as of or immediately prior to September 23,
1996 and the amount that would have been payable on

5

NY2: 92143.01

September 23, 1993 had the Employer's Revised Exhibit A been
in effect on that date.  No later than October 10, 1996, the
Employer may amend its Exhibit A.  If the Employer does so,
then no later than October 10, 1996, the Plan shall receive
the revised Exhibit A together with the difference, if any,
between the amount the Employer paid as of or immediately
prior to September 23, 1996 and the amount that would have
been payable on September 23, 1996 had the Employer's
revised Exhibit A been in effect on that date, with interest
at 8% compounded annually on that difference between the
period from September 23, 1996 to October 10, 1996.
Subsequent quarterly payments shall be received by the Plan
on or before each December 15, March 15, June 15, or
September 15 until the Employer has satisfied its
obligations hereunder.

     5.    <u>Releases</u>.

     (a)  Employer and its successors and assigns
(collectively referred to hereinafter as the "EMPLOYER
RELEASOR") (but none of the foregoing in their capacities as
a participant or beneficiary of the Plan), in consideration
of the Plan's obligations hereunder, unconditionally and
forever releases and discharges the Plan, its present and
former trustees, employees, agents, advisors, consultants,
and service providers, and each of its (or their) heirs,
agents, executors, administrators, successors and assigns

6

NY2 721101

(collectively referred to hereinafter as the "PLAN RELEASEE"), from any and all disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown which the EMPLOYER RELEASOR ever had, now has, or hereafter can, shall or may have, from the beginning of time to the date of this release, against the PLAN RELEASEE by reasons of any matter, cause or thing whatsoever relating in any way to Company's participation in, contributions to, or withdrawal from the Plan, including but not limited to the payment of withdrawal liability, mass withdrawal liability, minimum funding deficiencies, or payment of excise taxes. This release shall not prohibit Employer from asserting a challenge to the Plan's calculation of Employer's withdrawal liability and Minimum Funding Deficiency solely in the manner provided for and on the grounds set forth in paragraphs 6 and 7 of this Agreement, and further, shall not prohibit Employer from asserting a claim for a hardship settlement pursuant to, and in accordance with, paragraph 8 of this Agreement. This paragraph 5 shall not prohibit Employer from maintaining any action to enforce the terms of this Agreement or contesting

7

with the Internal Revenue Service any assessment on the Employer of excise taxes.

(b)  The Plan and each of its trustees, employees, agents, successors and assigns (collectively referred to hereinafter as the "PLAN RELEASOR"), in consideration of Employer's obligations hereunder, unconditionally and forever releases and discharges Employer, its present and former shareholders, partners, officers, directors, employees, agents, owners (but none of the foregoing in their capacity as a participant or beneficiary of the Plan), and each of its (or their) heirs, agents, executors, administrators, successors and assigns (collectively referred to hereinafter as the "EMPLOYER RELEASEE"), from any and all disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise, whether known or unknown which the PLAN RELEASOR ever had, now has, or hereafter can, shall or may have, from the beginning of time to the date of this release, against the EMPLOYER RELEASEES by reasons of any matter, cause or thing whatsoever, relating in any way to Company's participation in, contributions to, or withdrawal from the Plan, including but

8

not limited to any claim for "redetermination liability" or "reallocation liability" as those terms are defined in 29 C.F.R. § 2640.7 and interests on any amounts. This release shall not prohibit the Plan from maintaining any action to enforce the terms of this Agreement. Notwithstanding the foregoing, this release shall not apply to any person or entity included within the definition of Employer under this Agreement if they assert that they are not bound by this Agreement; provided, however this shall not vitiate the applicability of this release to all other persons or entities within definition of Employer under this Agreement.

(c) To the extent that the Employer complies with its obligations under this Agreement, the Plan shall not seek payment from any trades or businesses that were under "common control" with the Company with respect to the liabilities arising from the Company's participation in, contributions to, or withdrawal from the Plan, as the term "common control" is defined in Section 4001(b) of ERISA and 414(b) and (c) of the Code, which are jointly and severally liable for minimum funding and/or withdrawal liability (or related liabilities) under ERISA or the Code, but which are not included in the definition of Employer in this Agreement.

9

6.   Employers's Right to Challenge the Plan's
Withdrawal Liability and Minimum Funding
Deficiency Calculation

        (a)  If on or before July 3, 1996, Employer
had advised the Plan in writing of: (i) the Plan's record of
the Company's contribution history, for purposes of
calculating withdrawal liability and Minimum Funding
Deficiency, that Employer contends is erroneous, and (ii)
Employer's position as to the Company's correct contribution
history, and if Employer also had submitted credible
evidence in support of (i) and (ii) including, but not
limited to, canceled checks, payroll records, remittance
reports, agreements, correspondence, memoranda and/or other
documents or evidence, Employer may challenge the Plan's
calculations of Employer's withdrawal liability and Minimum
Funding Deficiency obligation in accordance with
subparagraphs 6(b) and (d) hereof.  The July 3, 1996
submission deadline is extended to August 20, 1996 for
employers who did not receive notice of a submission
deadline prior to their receipt of the Final Settlement Term
Sheet or the Special Settlement Term Sheet.  If Employer did
not timely challenge its contribution history in the manner
provided for in this paragraph 6, Employer shall be deemed
to have waived and released any claims or defenses relating
to Company's contribution history; provided, however, that
nothing in this paragraph shall be construed as preventing

10

Employer, if it otherwise timely submitted a contribution history challenge in accord with this paragraph 6(a), from submitting to the Plan additional evidence which must have been received by the Plan on or before August 8, 1996; and provided, further however, that Employer shall not be prohibited from challenging the results of any payroll audit(s), which audit results were not included in the contribution history the Plan provided to Employer before July 3, 1996 (or August 20, 1996 if applicable), and which are included on Exhibit B.

        (b)  If Employer has satisfied the requirements of paragraph 6(a), Employer may challenge the Plan's calculation of Employer's withdrawal liability and Minimum Funding Deficiency only on the basis of Employer asserting that the Plan used an incorrect contribution history for Company to calculate these liabilities. Employer challenges to the Plan's record of the Company's contribution history may include challenges relating to the amount the Company was obligated to contribute, the number of employees for whom Company was obligated to contribute to the Plan ("covered employees"), the rate of contributions due on behalf of covered employees, the amount of earnings of covered employees upon which contributions to the Plan were required, the duration of the obligation to contribute to the Plan, the effective date of a withdrawal, the

11

commencement of contributions for covered employees, the classifications for which contributions were required and sale of assets issues arising under Section 4204 of ERISA. Exhibit B shall reflect the Plan's final determination of Employer's challenge to the Plan's data of the Company's contribution history.

(c)  If Employer has challenged in writing, as provided in paragraph 6(a), the Plan's record of the Company's contribution history, the Plan shall be required to respond to Employer as to the Plan's determination of such challenge on or before September 6, 1996 unless the Employer and the Plan have agreed to a later date.

(d)  If Employer has challenged any calculation error in the Company's contribution history in accordance with this paragraph and disputes the Plan's decision in response to the Employer's contribution history challenge, Employer may pursue its claim only by commencing binding arbitration against the Plan on or before the later of (i) October 10, 1996 or (ii) within twenty (20) calendar days after receiving the Plan's response to the Employer's challenge as provided in paragraph 6(c).  Employer may commence arbitration by notifying the Plan in writing of its intent to arbitrate.  Arbitration shall be conducted in accordance with the rules set forth in paragraph 9(a) of this Agreement.  In such arbitration, Employer has the

12

burden of proving a calculation error by the Plan, and the presumption established in Section 4221(a)(3) of ERISA shall not apply.  Unless otherwise agreed by the Plan and the Employer, during the period between the date the first payment is due under this Agreement and the date of the arbitrator's final award (the "Interim Period"), the Employer shall pay the Plan in accordance with the calculations set forth in Exhibit B.  If it is determined that the Plan incorrectly calculated the Employer's liability under this Agreement, and the Employer overpaid the Plan during the Interim Period, the amounts due to the Plan hereunder shall be adjusted accordingly, and any amounts paid to the Plan in excess of that which otherwise should have been due under the corrected calculation shall be credited to Employer, with interest at an annual rate of 8.0 percent (the "Credit").  The Credit shall be applied against the next payment due under this Agreement, until the Credit is exhausted.  If Employer has satisfied its obligations pursuant to paragraph 2 of this Agreement, the Plan shall refund to Employer a payment in the amount of the Credit, based on the arbitrator's final decision, such amount to be paid within fifteen (15) days of the receipt of such decision by the Plan.

       7.    <u>Mass Withdrawal</u>.  The Employer may assert that it is not part of the mass withdrawal (as defined in 29

13

C.F.R. § 2640.7) only if it advised the Plan in writing of
its assertion and provided to the Plan credible evidence of
its position on or before July 3, 1996.  The July 3, 1996
submission deadline is extended to August 20, 1996 for
Employers who did not receive notice of a submission
deadline prior to their receipt of the Final Settlement Term
Sheet or the Special Settlement Term Sheet.  If the Employer
otherwise provides timely notice under this Paragraph, the
Employer shall be permitted to submit additional evidence in
support of its assertion that it was not part of the mass
withdrawal.  Such additional evidence must have been
received by the Plan by August 8, 1996.  Exhibit B shall
reflect the Plan's final determination of Employer's claim
that it is not part of the mass withdrawal.  If subsequent
to the effective date of this Agreement the Employer
continues to dispute whether it is part of the mass
withdrawal, and Employer has satisfied the requirements of
this paragraph, Employer may challenge the Plan's position
by commencing arbitration against the Plan by notifying the
Plan in writing of its intent to arbitrate on or before
October 10, 1996 or within twenty (20) calendar days after
receiving the Plan's response to the Employer's challenge,
whichever is later.  Arbitration shall be conducted in
accordance with the rules set forth in paragraph 9(a) of
this Agreement.  If it is determined by agreement between

14

the parties or a decision by the arbitrator that Employer is not part of the mass withdrawal, Employer's withdrawal liability shall be reduced in accordance with the provisions of Sections 4209(a) and 4219(c)(1)(B) of ERISA, the payments due as described in Exhibit B shall be adjusted accordingly, and Employer shall receive a credit for any amounts paid to the Plan in excess of that which otherwise should have been due under the revised withdrawal liability calculation with interest at the annual rate of 8% (the "Mass Withdrawal Credit"). The Mass Withdrawal Credit shall be applied against the next payment due under this Agreement, until the Mass Withdrawal Credit is exhausted. If Employer has satisfied it obligation pursuant to paragraph 2 of this Agreement, the Plan shall refund to Employer a payment in the amount of the Mass Withdrawal Credit, based on the arbitrator's final decision, such amount to be paid within fifteen (15) days of receipt of such decision by the Plan.

8.    Hardship Settlements.

(a)    Employer may obtain terms more favorable than those set forth in paragraphs 2, 3, or 4 of this Agreement if Employer qualifies for a hardship settlement and applies to the Plan for relief in the manner provided for herein. To apply for a hardship settlement, Employer must submit to the Plan (i) an executed Agreement together with a payment equal to the greater of Employer's first

15

payment under its proposed hardship settlement proposal or
110% of the quarterly Preliminary Payment Amount, on or
before September 23, 1996 and (ii) a written explanation of
the basis of the hardship settlement proposal on or before
October 10, 1996.  Upon written request by the Plan,
Employer shall submit to the Plan financial information the
Plan reasonably deems relevant to the hardship inquiry.
Such information shall be kept confidential by the Plan
pursuant to the provisions of paragraph 16 hereof.
Employer's request for a hardship settlement shall be denied
if it does not submit the foregoing information within
thirty (30) days of the Plan's request for information.  If
Employer is unable to provide the requested information
within thirty (30) days, the Employer may submit to the Plan
a written request for an extension of time (which request
must be received within the thirty (30) day period), which
request shall not be unreasonably denied by the Plan.  The
Employer may request in writing from the Plan relevant data
concerning the Plan's record of the Company's contribution
history which shall be provided by the Plan within sixty
(60) days of the Employer's request.

        (b)  The general test for determining the
Employer's entitlement to a hardship settlement is whether
(a) the Employer will not be able to continue to operate
absent such a settlement, or (b) the Employer will suffer a

NY2: 92843.01

material diminution in or material impediment to its ability
to operate if it is required to pay its withdrawal liability
and minimum funding deficiency in accordance with paragraphs
2, 3, and 4 of this Agreement ("the paragraph 2, 3, and 4
payments"). Employers that as of the date of this Agreement
are in bankruptcy or declare bankruptcy, or are not
operating or are liquidating or winding down operations are
not entitled to a hardship settlement. Various factors
shall be considered in determining whether the Employer is
entitled to a hardship settlement, including, but not
limited to: (i) whether Employer is operating at an
economic loss, (ii) whether employment at Employer has been
reduced materially from prior levels, (iii) whether sales
and profits of the business are depressed or are declining
as compared to prior periods, (iv) whether the paragraph 2,
3, and 4 payments would violate Employer's bank loan
covenants, (v) whether making the paragraph 2, 3, and 4
payments will materially diminish or impede employer's
ability to compete including, without limitation, raising
capital, hiring employees, or competitively pricing its
products, (vi) the annual installment payments otherwise
required under paragraph 3 hereof ("the paragraph 3 annual
installment payments) as a percentage of the Employer's
taxable income, (vii) the paragraph 3 annual installment
payments as a percentage of the Employer's gross sales,

17

(viii) the paragraph 3 annual installment as a percentage of the Employer's payroll, or (ix) the total payment otherwise to be made pursuant to paragraph 3 hereof as a percentage of the net worth of the Employer. For not-for-profit employers, additional factors may be considered, including, but not limited to: (i) the nature of, and restrictions on, funding provided to the organization by public and private sources or (ii) licensing, regulatory and accreditation requirements to which the Employer is subject.

(c)  As soon as practical after the submission of a hardship request by Employer under paragraph 8(a), the parties shall meet in person or by telephone to attempt to settle an Employer's hardship request.  If the parties cannot agree on whether Employer is entitled to a hardship settlement and the Plan determines that the Employer is not entitled to a hardship settlement, such dispute shall be resolved through binding final offer arbitration in which the arbitrator shall choose either Employer's proposal or the Plan's proposal.  In the arbitration, the Plan's proposal shall be in an amount not greater than the payment amounts required under paragraphs 3 or 4 of this Agreement for installment payments and Employer's proposal shall be identical to the proposal submitted to the Plan pursuant to paragraph 8(a) of this Agreement.  If the Plan determines that the Employer may be

18

entitled to a hardship settlement but does not agree to Employer's proposal, then the Plan shall make a counterproposal and the Employer may, but is not required to, make a counterproposal; such counterproposal to be made within thirty (30) days of the Plan's counterproposal. The Plan has the right to accept the Employer's counterproposal, offer its own counterproposal, or give notice that its prior proposal was its final proposal. If the parties do not agree following the Plan's final proposal, either of the parties may submit the dispute to binding final offer arbitration in which the arbitrator shall choose either the Employer's final proposal or the Plan's final proposal. Final offer arbitration shall be conducted in accordance with the rules set forth in paragraph 9 of this Agreement. Either party may commence arbitration by providing the other party notice of its intent to arbitrate. Each party loses the right to arbitrate if neither party commences arbitration within thirty (30) days after the Plan has provided notice to Employer that it has made its final proposal. In the interim period between the date payments are due as provided for in paragraphs 2, 3, and 4 and the arbitrator's final award, Employer shall make payments to the Plan at the greater of Employer's final hardship settlement proposal or 110% of the quarterly Preliminary Payment Amount.

(d)   If the Plan proposes in arbitration the amount set forth in paragraph 3 of this Agreement for installment payments and the arbitrator rejects Employer's request for a hardship settlement, the 110% (or 115% for Employers who were offered and accepted the Special Settlement Term Sheet) rate used to calculate the Employer's adjusted withdrawal liability on Exhibit B shall be increased to 112% (or 117% for employers who were offered and accepted the Special Settlement Term Sheet) and the Immunization Schedule shall be revised accordingly.

(e)   An interest rate of 8% per annum shall be charged to all payments that pursuant to the arbitration award should have been made during the pendency of the hardship settlement request and final arbitration decision.

(f)   If the arbitrator determines that Employer did not have reasonable basis for claiming hardship, the arbitrator shall order that Employer pay the Plan interest at the rate of 1% per month (or part of a month) on all deficiencies, plus the Plan's reasonable costs and attorneys' fees expended in connection with the arbitration.

(g)   If Employer's financial condition improves during the period in which it is obligated to pay the Plan under a hardship settlement so that it would not have a hardship (as that term is defined in paragraph 6(b)

20

of this Agreement) in paying to the Plan future payments due after the date of Employer's improved financial condition (the "Improvement Date"), the Plan on fifteen (15) days written notice to Employer may terminate the hardship settlement (the "Termination Notice") and require Employer to pay all payments due after the Improvement Date in accordance with the original installment payment provision set forth in paragraph 3 of this Agreement. If the Employer provides the Plan appropriate written notice in accordance with paragraph 10 of this Agreement (the "Paragraph 10 Notice"), the Plan may provide Termination Notice to the Employer with respect to the changes provided by Employer in the Paragraph 10 Notice within one hundred twenty (120) days of the Plan's receipt of the Paragraph 10 Notice from Employer. This period may be extended by mutual agreement of the parties. If Employer disputes the Plan's termination of the hardship settlement, the dispute shall be subject to arbitration pursuant to paragraph 6(b) of this Agreement. If the Plan prevails in arbitration, the Employer shall be obligated to pay to the Plan installment payments in accordance with paragraph 3 of this Agreement for the period commencing on the Improvement Date and ending on the date provided for in paragraph 3. Employer shall pay interest at the rate of 8% per annum on all installments due from and after the Improvement Date.

21

9.   Arbitration.

(a)  Any arbitration commenced pursuant to paragraphs 6 and 7 of this Agreement shall be conducted before one of the following arbitrators:

Ralph Berger

Bonnie S. Weinstock

Ira Jaffe

Requests for arbitration shall be assigned to the above individuals on a rotating basis.  Arbitration commenced pursuant to paragraphs 6 and 7 of this Agreement shall be conducted pursuant to the American Arbitration Association's ("AAA") Multiemployer Pension Plan Arbitration Rules, although the AAA shall not be utilized as the administrator of the arbitration process.

(b)  Any arbitration commenced pursuant to paragraphs 8 or 10 of this Agreement shall be conducted before one of the following arbitrators:

Margaret Shaw

Carol Wittenberg

Philip Ross

Requests for arbitration shall be assigned to the above-individuals on a rotating basis.  Arbitration commenced pursuant to paragraphs 8 or 10 of this Agreement shall be conducted pursuant to the AAA's Commercial

22

Arbitration Rules, although the AAA shall not be utilized as the administrator of the arbitration process.

(c)  Each time that a party seeks arbitration under this Agreement, the arbitrator who shall hear and decide the dispute between the parties shall be chosen on a rotating basis from the list of names set forth in subparagraphs (a) and (b), which correspond to the issue sought to be arbitrated.  Such rotating assignments shall be made by the Plan in the order of the dates of the notice of intention to arbitrate.  When there is more than one notice bearing the same date, the assignment shall be made in alphabetical order of the names of the Companies involved.

(d)  Each party shall bear its own costs in any arbitration commenced under this Agreement, unless otherwise determined by the arbitrator or provided for by paragraph 8(f) of this Agreement.  Arbitration decisions hereunder shall be final and binding on the parties.

(e)  Unless the Plan and Employer agree otherwise, the situs of arbitration hereunder shall be in New York, New York.

(f)  If the arbitrators listed in paragraphs 9(a) or (b) are not available and the parties are unable to agree on an alternate arbitrator, the parties shall arbitrate their dispute before the AAA in New York, New York.

23

10.   <u>Continuing Duty to Notify Plan</u>.

(a)   If Employer elects to satisfy its obligations to the Plan pursuant to paragraphs 3 or 4 of the Agreement or obtains a hardship settlement under paragraph 8 of the Agreement, to the extent possible, it shall notify the Plan, in writing, thirty (30) calendar days prior to material changes in its corporate structure or the sale of business or assets, which are reasonably likely to materially impact adversely its ability to comply with the Installment Payment Terms defined in this Agreement and immediately upon the occurrence of any other event which appears reasonably likely to result in a change in Employer's financial condition, when such occurrences may either (i) materially impact adversely Employer's ability to satisfy its obligations hereunder, or (ii) if Employer has a hardship settlement (by agreement or arbitration award), materially improve Employer's financial condition.

(b)   If the Plan reasonably determines that Employer is unable or will be unable to fully satisfy its obligations to comply fully with the Installment Payment Terms hereunder, including but not limited to obligations pursuant to a hardship settlement, if applicable, as a result of any factors set forth in paragraph 10(a), or as a result of the occurrence of a transaction the principle purpose of which is to evade or avoid liability under this

24

Agreement, the Plan shall notify the Employer in writing of
its finding and may accelerate payments required hereunder
and require a lump sum payment to be made as soon as
possible in an amount equal to the present value of the
remaining payments due hereunder, using an 8% discount rate.
If that lump sum payment is timely made, the amount due and
owing shall be adjusted downward in accordance with the
applicable Immunization Schedule.  If the Plan has given an
acceleration notice to Employer as provided herein, Employer
has the right to demand arbitration before an arbitrator
specified in paragraph 9(b) and selected in the manner
provided therein.  Upon the Employer's demand for
arbitration, the Employer must post security in an amount
reasonably acceptable to the Plan.  If Employer fails to
post security, the Plan has the right to seek injunctive
relief in an appropriate court.  The arbitrator's authority
is limited to determining whether the Plan had the right to
accelerate payment in accordance with the factors set forth
in this Paragraph 10.

    11.  Similarly Situated Employers.  The Plan
agrees that no former contributing employer shall receive
settlement terms that are more favorable than those offered
under this Agreement.  The foregoing sentence does not apply
to employers who are in bankruptcy, are not operating, or
are liquidating or winding down operations pursuant to a

NY2 97263.01

plan of liquidation or have requested and received hardship settlements.   This section also does not apply to a situation in which the Plan determines that an employer is unable to meet its obligations under this Agreement.   This section shall not prohibit the Plan from requiring employers who did not execute the Final Settlement Term Sheet from providing additional consideration.

          12.   <u>Late Payments</u>.   If Employer fails to satisfy in a timely fashion any payment obligation hereunder Employer shall be charged interest on the overdue amount at the rate of 1% per month, or part of a month.   If Employer fails to cure such delinquency within sixty (60) calendar days of the Plan sending written notice from the Plan of its delinquency, Employer's payment obligations hereunder shall become immediately due and owing.   If the Plan commences litigation to collect such payment obligations and prevails, Employer shall become liable to the Plan for the remedies set forth in Section 502(g)(2) of ERISA.

          13.   If conditions or circumstances arise subsequent to the execution of this Agreement which causes an Employer to be unable to satisfy its installment payment obligations under paragraph 3 or paragraph 4, the Employer must notify the Plan in writing of the basis for its inability to satisfy its obligations and its proposed

26

revised schedule of payments.  The Plan agrees to meet with the Employer to discuss its request for a revised payment schedule.

14.  Plan's Right to Void Agreement.  The Plan has the right to void this Agreement if it does not receive this Agreement executed by the Employer with Employer's initial payment on or before September 23, 1996, if the Plan notifies Employer within fifteen (15) days of receiving Employer's initial payment.

15.  Notices.  All notices hereunder shall be sent by confirmed facsimile or guaranteed overnight mail, with tracing capability, as follows:

> If to the Plan:
>
> District 65 Pension Plan
> c/o Glenn D. Shaffer
> President
> I.E. Shaffer & Co.
> 830 Bear Tavern Road
> CN 01028
> West Trenton, New Jersey 08628-1019
>
> with a copy to:
>
> Ronald E. Richman, Esq.
> Chadbourne & Parke LLP
> 30 Rockefeller Plaza
> New York, New York 10112

27

and

William T. Josem, Esq.
Cleary & Josem LLP
1420 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19102-4097

<u>If to Employer</u>:

DEMARCO CALIFORNIA FABRICS. INC.
119 WEST 40 ST,
N.Y. N.Y. 10018

<u>with a copy to:</u>

        Such notices shall be deemed given when received.
Either party may change the names and addresses of the
persons/entities to whom notice shall be given by written
notice to the other.

        16.  <u>Confidentiality</u>.  The Plan agrees that any
non-public information provided to it pursuant to paragraphs
8 and 10 of this Agreement shall be treated as confidential
information and, unless required by law, shall not be
provided to, or otherwise disclosed, to any labor
organizations or other third parties, except that the Plan
may provide such information to its trustees, third-party
administrator, accountants, financial analysts, attorneys,
consultants and others for the purpose of representing
itself in arbitration or a lawsuit or as may be required by

law.  The Plan shall advise any trustees, third-party
administrators, accountants, financial analysts, attorneys,
consultants and others to whom the Plan shows any non-public
information disclosed under this Agreement of this
confidentiality provision and shall require that such
individuals or entities (with the exception of arbitrators
and court officials or employees) execute in writing an
acknowledgment of the confidentiality of such material.  If
such information is subpoenaed, notice shall be provided to
Employer, and the Plan shall cooperate at the Employer's
expense in any effort by the Employer to quash any such
request for the documents.

17.  _Choice of Law_.  This Agreement shall be
construed in accordance with the laws of the State of New
York without giving effect to New York's rules concerning
conflicts of law, except where preempted by ERISA.

18.  _Preliminary Payment Agreement Superseded_.
This Agreement shall supersede and be substituted for the
Preliminary Payment Agreement previously entered into
between the Plan and the Company.  The Employer's execution
of and compliance with this Agreement shall void all
obligations of the Company under the Preliminary Payment
Agreement to make quarterly payments, beginning with the
quarterly payment due on September 15, 1996.  The foregoing

NY3: 92845.01

shall not void Company's obligation to the Plan to make
quarterly payments under the Preliminary Payment Agreement
that were due prior to September 15, 1996 or to pay interest
on any late payments.  The parties hereby waive the
requirement contained in paragraph 8 of the Preliminary
Payment Agreement that they provide thirty (30) days' notice
of the Termination of the Preliminary Payment Agreement.

19.  __Entire Agreement__.  This Agreement constitutes
the entire agreement between the parties with respect to the
subject matter hereof and supersedes any and all prior
agreements or understandings between the parties arising out
of or relating to the Assessment.  This Agreement may only
be amended by a writing executed by both parties.

20.  __Severability__.  The provisions of this
Agreement shall be deemed severable and the invalidity or
unenforceability of any provision shall not affect the
validity or enforceability of the other provisions hereof.
If any provision of this Agreement, or the application
thereof to any person or any circumstance, is invalid or
unenforceable, (i) a suitable and equitable provision shall
be substituted therefor by a court or arbitrator or the
parties to carry out, so far as may be valid and
enforceable, the intent and purpose of such invalid or
unenforceable provision, and (ii) the remainder of this

NY2 972463.01

Agreement shall not be affected by such invalidity or
unenforceability, nor shall such invalidity or
enforceability affect the validity or enforceability of such
provision, or the application thereof, in any other
jurisdiction.

21. <u>Acknowledgment of Authority</u>.  The individual
executing this Agreement on behalf of the Company represents
and warrants that he or she has authority to execute this
Agreement on behalf of the Company.  The Company executing
this Agreement represents and warrants that it has the
authority to execute the Agreement on behalf of all persons
or entities defined as the Employer herein.  The individual
executing this Agreement on behalf of the Plan represents
and warrants that he has authority to act on behalf of the
Plan, pursuant to unanimous resolution of the Board of
Trustees of the Plan approving the Agreement.

IN WITNESS WHEREOF, the parties have executed this
Agreement on the 19 day of SEPTEMBER, 1996.

DISTRICT 65 PENSION PLAN        [Employer]

By: _____        By: _____

31

NY2: 92863.01

SETTLEMENT AGREEMENT BETWEEN
DISTRICT 65 PENSION PLAN AND DE MARCO CALIF FABRICS

EXHIBIT B

Withdrawal Date: 01/31/95
Present Value of Vested Benefits at 01/31/94:
     Interest Rate: Blended
     Mortality Table: UP84
     Retirement Assumption: Age 62/65
Collection of Funding Deficiencies: 50% collected
Collection of Withdrawal Liability: 50% collected
Highest 3-year average compensation: $242,098
Highest contribution rate: 5.00%
No interest is charged for withdrawal liability or the
  funding deficiency until September 15, 1996
The funding deficiency is reduced in accordance with
  paragraph 1 of the Settlement Term Sheet

**Allocated funding deficiency by year:**
Deficiency for year ending 1/31/93 = $ 7,303
Deficiency for year ending 1/31/94 =  26,232
Deficiency for year ending 1/31/95 =  17,215
Total deficiency                    = $50,750

**A. LUMP SUM OPTION**
| | |
|---|---:|
| 1. Minimum Funding Deficiency Allocation | 50,750 |
| 2. Withdrawal Liability Amount | 163,416 |
| 3. Reduced Withdrawal Liability Amount | 157,364 |
| 4. Additional credits, if any | 0 |
| 5. Total (A.1. plus A.3. less A.4.) | 208,114 |

**B. TWENTY YEAR PAYMENT OPTION**
| | |
|---|---:|
| 1. Minimum Funding Deficiency Allocation | 50,750 |
| 2. Withdrawal Liability Amount | 163,416 |
| 3. Reduced Withdrawal Liability Amount | 157,364 |
| 4. Excess payments made on or before September 15, 1996, if any, as per paragraph 5(b) of the Term Sheet | 0 |
| 5. Subtotal of Withdrawal Liability Amount (B.3. less B.4.) | 157,364 |
| 6. Adjusted Withdrawal Liability Amount (B.5. times 110%) | 173,100 |
| 7. Total (B.1. + B.6.) | 223,850 |
| 8. Amount of each quarterly payment to amortize Total over 20 years | 5,431 |

**C. MODIFIED INSTALLMENT/PARTIAL LUMP SUM PAYMENT OPTION**
| | |
|---|---:|
| 1. Subtotal of Withdrawal Liability Amount (from B.5.) | 157,364 |
| 2. Amount of partial lump sum payment, if any | _____ |
| 3. Subtotal less partial lump sum payment, if any (C.1. less C.2.) | _____ |
| 4. Number of quarterly payments if Employer amortizing in less than 20 years | _____ |
| 5. Adjusted Withdrawal Liability Amount applying Immunization Factor (C.3. times the appropriate Immunization Factor) | _____ |
| 6. Total Withdrawal Liability and Minimum Funding Deficiency Allocation to be amortized (B.1. plus C.5.) | _____ |
| 7. Amount of each quarterly payment to amortize C.6. over the number of years reflected by C.4. | _____ |

## DE MARCO CALIF FABRICS (# 3529)
## CONTRIBUTIONS AND SALARIES BY PLAN YEAR

| Plan Year | | Contributions | | | |
| --- | --- | --- | --- | --- | --- |
| Start | End | Received | Delinquent | Total | Salary |
| 02/01/75 | 01/31/76 | 2,129 | 0 | 2,129 | 36,378 |
| 02/01/76 | 01/31/77 | 2,174 | 0 | 2,174 | 48,307 |
| 02/01/77 | 01/31/78 | 2,839 | 0 | 2,839 | 62,741 |
| 02/01/78 | 01/31/79 | 3,930 | 0 | 3,930 | 82,744 |
| 02/01/79 | 01/31/80 | 2,563 | 0 | 2,563 | 53,964 |
| 02/01/80 | 01/31/81 | 3,023 | 0 | 3,023 | 63,646 |
| 02/01/81 | 01/31/82 | 3,852 | 0 | 3,852 | 81,091 |
| 02/01/82 | 01/31/83 | 5,416 | 0 | 5,416 | 109,073 |
| 02/01/83 | 01/31/84 | 6,916 | 0 | 6,916 | 138,321 |
| 02/01/84 | 01/31/85 | 6,792 | 0 | 6,792 | 135,834 |
| 02/01/85 | 01/31/86 | 7,102 | 0 | 7,102 | 142,041 |
| 02/01/86 | 01/31/87 | 8,638 | 0 | 8,638 | 172,767 |
| 02/01/87 | 01/31/88 | 9,061 | 0 | 9,061 | 181,217 |
| 02/01/88 | 01/31/89 | 9,111 | 0 | 9,111 | 182,225 |
| 02/01/89 | 01/31/90 | 10,226 | 0 | 10,226 | 204,522 |
| 02/01/90 | 01/31/91 | 12,056 | 0 | 12,056 | 241,113 |
| 02/01/91 | 01/31/92 | 12,886 | 0 | 12,886 | 257,728 |
| 02/01/92 | 01/31/93 | 8,606 | 0 | 8,606 | 172,117 |
| 02/01/93 | 01/31/94 | 14,822 | 0 | 14,822 | 296,449 |
| 02/01/94 | 01/31/95 | 11,681 | 0 | 11,681 | 233,623 |

DE MARCO CALIF FABRICS (# 3529)

ALLOCATION OF TOTAL FUNDING DEFICIENCY TO DELINQUENT AND INSUFFICIENT CONTRIBUTIONS

| | 01/31/93 | 01/31/94 | 01/31/95 | Total |
|---|---|---|---|---|
| A. Plan Year Ended | | | | |
| | --------- | --------- | --------- | --------- |
| B. Funding Deficiency = FD | 4,761,876 | 9,923,524 | 6,864,459 | 21,549,859 |
| C. Funding Deficiency due to Delinquent Contributions: | | | | |
| 1. Total delinquent contributions for period = C:TD | 130,037 | 52,879 | 242,070 | 424,986 |
| 2. Total required contributions for period = C:TR | 5,477,911 | 5,553,927 | 4,401,668 | 15,433,508 |
| 3. Funding deficiency due to delinquent contributions: | | | | |
| B. x (C.1./C.2.) = FD:DC | 113,039 | 94,481 | 377,511 | 585,032 |
| D. Funding Deficiency due to Insufficient Contributions: | | | | |
| B. - C.3. = FD:IC | 4,648,836 | 9,829,042 | 6,486,947 | 20,964,826 |

ALLOCATION OF TOTAL FUNDING DEFICIENCY TO EMPLOYER

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|
| | | | | FD:DC Allocated to Delinquent Employers | FD:IC Allocated to Contributing Employers | Funding Deficiency Allocated to Employer |
| | | Contributions | | | | |
| | | -------------------------- | | | | |
| Plan Year Ended | Delinquent | Received | Required (2)+(3) | FD:DC*[(2)/C:TD] | FD:IC*[(4)/C:TR] | (5)+(6) |
| ------- | ---------- | -------- | -------- | ------------- | ------------- | ------- |
| 01/31/93 | 0 | 8,606 | 8,606 | 0 | 7,303 | 7,303 |
| 01/31/94 | 0 | 14,822 | 14,822 | 0 | 26,232 | 26,232 |
| 01/31/95 | 0 | 11,681 | 11,681 | 0 | 17,215 | 17,215 |

# EXHIBIT "B"

# *IE SHAFFER*

P L A N   A D M I N I S T R A T O R S

830 Bear Tavern Road • PO Box 1028 • West Trenton, NJ 08628

(800) 792-3666
(609) 883-6688
Fax (609) 530-1331
www.ieshaffer.com

August 18, 2006

DeMarco California Fabrics
1400 Broadway, Suite 300
New York, NY  10018

RE:  District 65 Pension Plan

Gentlemen:

The records of the District 65 Pension Plan reflect that you have failed to remit the quarterly payments due on or before June 15, 2006 under the Settlement Agreement, Paragraph 12 of the Settlement Agreement provides, in relevant part:

> If Employer fails to satisfy in a timely fashion any payment obligation hereunder, Employer shall be charged interest on the overdue amount at the rate of 1% per month, or part of a month.

In addition to the delinquent quarterly payment, under the foregoing provision, you are obligated to forward interest to the Pension Plan on the payments that were due for the above period.  Since the overdue payment has yet to be received (i.e. the payment is currently overdue for more than one month), interest in the amount of 3% of the overdue payment is due and owing.  Additional interest will accrue if your payment is not received before September 15, 2006.

Please consider this letter as notice under Paragraph 12 of the Settlement Agreement that you must cure this delinquency within sixty (60) calendar days of this notice or the Employer's payment obligations under the Settlement Agreement will become immediately due and owing.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Glenn D. Shaffer
Administrator

GDS:bam
cc:  William T. Josem, Esquire
     Ronald E. Richman, Esquire

EMPLOYEE BENEFIT PLAN ADMINISTRATORS AND CONSULTANTS

# EXHIBIT "C"

## DEMARCO CALIFORNIA FABRICS INC
### 1400 BROADWAY, NEW YORK, NY 10018 TEL. (212) 869 8255

August 14, 2006

Jeremy P. Meyer
Cleary & Josem LLP
1 Liberty Place, 51st floor
1650 Market Street
Philadelphia, PA 19103

### VIA FAX & CERTIFIED MAIL

Dear Mr. Meyer,

Please be advised that DeMarco California Fabrics Inc has been liquidated. Our business operations have ceased as of 6/30/06. We have submitted financial information to our accountants and attorney to review. We expect to receive their input within the next 60 days and at that time we will attempt to resolve DeMarco California Fabrics Inc debt and obligations. If you need any further information, please contact Lester or Harlan of Lazarus & Lazarus 240 Madison Avenue, New York, NY 10016, phone 212-889-7400.

Sincerely,

Michael Marco

Cc Sidney Orenstein
    Salibello & Broader LLP
    IE Shaffer

# EXHIBIT "D"

# DEMARCO CALIFORNIA FABRICS INC
## 1173A SECOND AVENUE
## SUITE 149
## NEW YORK, NY 10021-8239



October 16, 2006

Glenn D. Shaffer
IE Shaffer
830 Bear Tavern Road
P.O Box 1028
West Trenton, NJ 08628

<u>VIA FAX, EMAIL & CERTIFIED MAIL</u>

Gentlemen:

We are in receipt of your letter of 8/16/06 regarding payment on District 65 Pension Plan. DeMarco California Fabrics has ceased operations as of June 30, 2006. Due to extremely high operating losses in 2005 and 2006, we do not have assets available to make any additional payments. DeMarco California Fabrics Tax Return for 2005 showed ordinary business loss of $801,946. In the first six months of 2006 we suffered additional losses and closed our showroom and warehouse. Receivables that were collected, and proceeds from the inventory that was liquidated have been paid out in order to meet employee's salary obligations, termination obligations and sales commission. There are no additional funds now or projected in the future to cover additional obligations. We want to resolve this issue ASAP but we are unable to propose any alternative at this time. Please advise your thoughts and if you wish to contact me to discuss, you can call me at 201-906-8617 or email me at **marco214@mac.com** or respond to me by letter at the above address.

Sincerely,

Michael Marco

Cc: Jeremy Meyer
    William Josem
    Gary Broader
    Sidney Orenstein

# EXHIBIT "E"



CLEARY & JOSEM LLP
Attorneys and Counsellors at Law
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
215.735.9099
Fax: 215.640.3201
www.clearyjosem.com
E-Mail: labor@clearyjosem.com

Jeremy E. Meyer
jmeyer@clearyjosem.com
Admitted in PA, NJ & IL
Also associated with Schwarz, Cleary,
    Josem & Schwarz

October 18, 2006

**By Fax and U.S. Mail**
**212-302-4387**

Michael Marco
DeMarco California Fabrics, Inc.
1173A Second Avenue
Suite 149
New York, NY 10021-8239

       **Re:**    **District 65 Pension Plan**

Dear Mr. Marco:

      As you know, this office represents the District 65 Pension Plan (the "Plan"). This is in response to your letter dated October 16, 2006 to Glenn Shaffer, the District 65 Plan Administrator. In your letter you stated that "there are no additional funds now or projected in the future to cover additional obligations" such as DeMarco California Fabric's liability to the Plan. However, you also noted that you wished to resolve the Company's outstanding liability to the Plan "ASAP."

      In order to resolve this matter, we require information concerning the distribution of DeMarco California Fabric's assets. Please provide a statement of where its assets were paid during the liquidation of the Company. This statement should include the amounts paid to each and every Company principal, shareholder and officer.

New Jersey Office ● 450 Tilton Road, Suite 220 ● Northfield, NJ 08225-1259
609.407.0222 ● Fax: 609.484.0897

Michael Marco
October 18, 2006
Page 2

     Your prompt attention to this matter will be appreciated.

Sincerely,

JEREMY E. MEYER

cc:    Glenn Shaffer
        Gary Broder

# EXHIBIT "F"

## Jeremy Meyer

**From:** "Jeremy Meyer" <jmeyer@clearyjosem.com>
**To:** <marco214@mac.com>
**Sent:** Thursday, February 01, 2007 3:17 PM
**Attach:** Marco4.ltr.pdf
**Subject:** District 65 Pension Plan -and- DeMarco California Fabric

*See attached letter.*

Jeremy E. Meyer, Esquire
CLEARY & JOSEM LLP
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
215-735-9099
215-640-3201(fax)

This e-mail message is intended for the personal use of the recipient(s) named above. The message may be an attorney-client communication and as such is privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.



CLEARY & JOSEM LLP
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
215.735.9099
Fax: 215.640.3201
www.clearyjosem.com
E-Mail: labor@clearyjosem.com

Jeremy E. Meyer
jmeyer@clearyjosem.com
Admitted in PA, NJ & IL
Also associated with Schwarz, Cleary,
   Josem & Schwarz

February 1, 2007

**By U.S. Mail and e-mail**
**marco412@mac.com**

Michael Marco
DeMarco California Fabrics, Inc.
1173A Second Avenue
Suite 149
New York, NY 10021-8239

   Re:   **District 65 Pension Plan**

Dear Mr. Marco:

   As you know from prior correspondence, this office represents the District 65 Pension Plan (the "Plan"). In 1996, DeMarco California Fabrics, Inc. (the "Company") entered into a Settlement Agreement with the Plan in which it agreed to pay its withdrawal liability to the Plan over the course of twenty (20) years in quarterly payments of $5,431.00. Paragraph 10(a) of the Settlement Agreement requires the Company to notify the Plan of any material changes that are "reasonably likely to materially impact adversely its ability to comply with the Installment Payment Terms."

   The Company made its quarterly payments pursuant to the terms of the Settlement Agreement until 2006 and then ceased making payments. By letter dated October 16, 2006, you informed the Plan that the Company "has ceased operations as of June 30, 2006" and stated that the Company "do[es] not have any assets available to make any additional payments." However, you stated that you desired to "resolve the issue [of the Company's liability] ASAP."

---

Schwarz, Cleary Josem & Schwarz LLC is a partnership of the law firms of
Cleary & Josem LLP and Schwarz & Schwarz PC

New Jersey Office ✦ 450 Tilton Road, Suite 220 ✦ Northfield, NJ 08225-1259
609.407.0222 ✦ Fax: 609.484.0897

Michael Marco
DeMarco California Fabrics, Inc.
February 1, 2007
Page 2

As you know, after we received your letter, we referred this matter to Stuart Fleischer, one of the Plan's advisors. You provided Mr. Fleischer with the Company's financial records going back to 2003. After reviewing the records with Mr. Fleischer, the Plan has concluded that the Company's business was in decline prior to 2003 and that beginning in 2003, the Company principals began taking out as much money as possible from the corporation. Indeed, between 2003 and 2005, the Company distributed almost $2 million to its shareholders. Those distributions were *in addition to* nearly a half million dollars in total compensation paid to the Company's officers, who were the same individuals as the shareholders.

Therefore, it is evident that the Company violated Paragraph 10(a) of the Settlement Agreement by failing to notify the Plan of the Company's declining economic situation and insolvency until after all assets were distributed. Furthermore, by draining the Company coffers during its period of decline without paying the Company's liability to the Plan, the Company principals abused the corporate form.

Under the circumstances, we see no basis for agreeing to any reduction in the Company's liability to the Plan. Accordingly, please contact my office to arrange for payment of the full $166,385.29 lump sum liability or to discuss alternative payment terms. If we do not hear from you within ten (10) days of the date of this letter, we will have no option but to file a lawsuit naming both the Company and the individual shareholders as defendants.

If you have any questions or would like to further discuss the matter, please contact the undersigned.

Sincerely,

JEREMY E. MEYER
cc:    Glenn Shaffer
       Stuart L. Fleischer

# EXHIBIT "G"

# LAW OFFICES OF
# LAZARUS & LAZARUS, P.C.

240 Madison Avenue
New York, New York 10016
Tel: (212) 889-7400
Fax: (212) 684-0314

# FAX COVER SHEET

## MATTERS PENDING - PLEASE DELIVER PROMPTLY

FAX NUMBER TRANSMITTED TO: LISTED BELOW

To:   **JEREMY E. MEYER, ESQ.**      **215 640-3201 FAX**
                                      **215 735-9099 TEL**

Re:   **MICHAEL MARCO / DeMARCO CALIFORNIA FABRICS**

From: HARLAN M. LAZARUS, ESQ.

Date:  FEBRUARY 2, 2007

Number of pages inclusive of this Cover Sheet is ( 2 ).

COMMENT: **ORIGINAL WILL FOLLOW.**

**CONFIDENTIALITY NOTICE:** This material is being sent by a law office and is intended for the addressee <u>only</u>. Various legal protections including the attorney-client privilege apply to this material and no consent is given to its being read, or used, by anyone other than the intended recipient. Any other use is unlawful. If you receive this facsimile in error by mistake, please destroy it immediately and notify the sender at (212) 889-7400.

*IF YOU DO NOT RECEIVE ALL PAGES LISTED ABOVE, PLEASE IMMEDIATELY TELEPHONE US AT:
(212) 889-7400 AND ADVISE SENDER.

LAZARUS & LAZARUS, P.C.

COUNSELLORS AT LAW

240 MADISON AVENUE
NEW YORK, N.Y. 10016

AREA CODE 212
889-7400

TELECOPIER
212-884-0314

TELEX
238790 NYK

February 2, 2007

*Via Facsimile & First Class Mail To:*

**CLEARY & JOSEM LLP**
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Attention: **JEREMY E. MEYER, ESQ.**

*Regarding:* MICHAEL MARCO AND DEMARCO CALIFORNIA FABRICS, INC.

Dear Counselor:

WITHOUT PREJUDICE.

We are the attorneys for Michael Marco and DeMarco California Fabrics, Inc.

Mr. Marco has forwarded to us a copy of your letter dated February 1, 2007.

In the first instance, please make certain to direct all future correspondence of , or relating to this matter, to the attention of the undersigned.

I welcome the opportunity to meet with you and your client, to discuss the factual basis of the conclusions recited in your February 1, 2007 transmittal.

However, such a meeting would not be productive until such time as I have had the opportunity to review the records provided by Mr. Marco to Mr. Fleischer.

*Because of my other commitments,* I do not anticipate being able to conclude such a review until the expiration of thirty days from the date first written above.

I trust, and expect, that this will not be a problem for you and/or your client.

Please advise.

Very truly yours,

Harlan M. Lazarus

HML.TAO - *cc. Michael Marco & DeMarco California Fabrics, Inc.*

# EXHIBIT "H"



# CLEARY
# JOSEM

CLEARY & JOSEM LLP
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
215.735.9099
Fax: 215.640.3201
www.clearyjosem.com
E-Mail: labor@clearyjosem.com

Jeremy E. Meyer
jmeyer@clearyjosem.com
Admitted in PA, NJ & IL
Also associated with Schwarz, Cleary,
    Josem & Schwarz

February 5, 2007

**By Fax and U.S. Mail**
**212-684-0314**

Harlan M. Lazarus, Esquire
Law Offices of Lazarus & Lazarus, P.C.
240 Madison Avenue
New York, NY 10016

**Re:    District 65 Pension Plan -and- DeMarco California Fabrics, Inc.**

Dear Mr. Lazarus:

As you know, this office represents the District 65 Pension Plan (the "Plan"). This is in response to your letter dated February 2, 2007 in which you requested time to review the financial records supplied by Mr. Marco and stated that such review would take thirty days.

The Plan Trustees are not willing to wait that long, absent some guarantee that the funds will not be dissipated. If you client is willing to place the $166,385.29 in escrow and provide proof of the same, the Trustees would consider delaying our lawsuit.

Please advise how you wish to proceed.

Sincerely,

JEREMY E. MEYER
cc:    Glenn Shaffer, Administrator

```
            **********************
       ***    TX REPORT    ***
            **********************


    TRANSMISSION OK

    TX/RX NO              1888
    CONNECTION TEL                 812126840314
    SUBADDRESS
    CONNECTION ID
    ST. TIME             02/05 14:13
    USAGE T              00'17
    PGS. SENT               1
    RESULT               OK
```

# CLEARY JOSEM

CLEARY & JOSEM LLP
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
215.735.9099
Fax: 215.640.3201
www.clearyjosem.com
E-Mail: labor@clearyjosem.com

Jeremy E. Meyer
jmeyer@clearyjosem.com
Admitted in PA, NJ & IL
Also associated with: Schwarz, Cleary,
   Josem & Schwarz

February 5, 2007

**By Fax and U.S. Mail**
**212-684-0314**

Harlan M. Lazarus, Esquire
Law Offices of Lazarus & Lazarus, P.C.
240 Madison Avenue
New York, NY 10016

**Re:    District 65 Pension Plan -and- DeMarco California Fabrics, Inc.**

Dear Mr. Lazarus:

As you know, this office represents the District 65 Pension Plan (the "Plan"). This is in response to your letter dated February 2, 2007 in which you requested time to review the financial records supplied by Mr. Marco and stated that such review would take thirty days.

The Plan Trustees are not willing to wait that long, absent some guarantee that the funds will not be dissipated. If you client is willing to place the $166,385.29 in escrow and provide proof of the same, the Trustees would consider delaying our lawsuit.

Please advise how you wish to proceed.

# EXHIBIT "I"

# LAW OFFICES OF
## LAZARUS & LAZARUS, P.C.
240 Madison Avenue
New York, New York 10016
Tel: (212) 889-7400
Fax: (212) 684-0314

# FAX COVER SHEET

## MATTERS PENDING - PLEASE DELIVER PROMPTLY

FAX NUMBER TRANSMITTED TO: LISTED BELOW

To:   **JEREMY E. MEYER, ESQ.**            **215 640-3201 FAX**
                                           **215 735-9099 TEL**

Re:   **MICHAEL MARCO / DeMARCO CALIFORNIA FABRICS**

From: HARLAN M. LAZARUS, ESQ.

Date: FEBRUARY 7, 2007

Number of pages inclusive of this Cover Sheet is (    ).

COMMENT: **ORIGINAL WILL FOLLOW.**

**CONFIDENTIALITY NOTICE:** This material is being sent by a law office and is intended for the addressee <u>only</u>. Various legal protections including the attorney-client privilege apply to this material and no consent is given to its being read, or used, by anyone other than the intended recipient. Any other use is unlawful. If you receive this facsimile in error by mistake, please destroy it immediately and notify the sender at (212) 889-7400.

"IF YOU DO NOT RECEIVE ALL PAGES LISTED ABOVE, PLEASE IMMEDIATELY TELEPHONE US AT:
(212) 889-7400 AND ADVISE SENDER.

## LAZARUS & LAZARUS, P.C.
### COUNSELLORS AT LAW

240 MADISON AVENUE
NEW YORK, N.Y. 10016

AREA CODE 212
889-7400

TELECOPIER
212-684-0314

TELEX
238790 NYK

February 7, 2007

*Via Facsimile & First Class Mail To*:

**CLEARY & JOSEM LLP**
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Attention: **JEREMY E. MEYER, ESQ.**

*Regarding*: <u>MICHAEL MARCO AND DEMARCO CALIFORNIA FABRICS, INC.</u>

Dear Counselor:

WITHOUT PREJUDICE.

I am in receipt of your facsimile transmittal dated February 5, 2007 in connection with the above referenced.

Your invitation to post a bond is declined.

I will accelerate however, as best I can, my review of the materials in question.

Very truly yours,

Harlan M. Lazarus

HML.TAO - *cc. Michael Marco & DeMarco California Fabrics, Inc.*

# EXHIBIT "J"

## DISTRICT 65 PAYMENT SCHEDULE

| # Annual Interest: | 8.00% |
|---|---|
| Quarterly Rate: | 1.01943 |

\* Remainder at quarter start,
but after payment in (B) is made.

**De Marco Calif Fabrics**

Adjusted Lump Sum Option at 12/15/2005:

| | | |
|---|---|---|
| 1. | Original reduced withdrawal liability amount | $157,364 |
| 2. | Adjusted withdrawal liability amount (1 times 105.23%) | 165,594 |
| 3. | Minimum Funding Deficiency Allocation | 50,750 |
| 4. | Total (2 + 3) | $216,344 |

| Quarter | Payment Due Date | (A) Original Liability with interest # | (B) Payments Due at Quarter Start | (C) Cumulative Payments with interest # | (D) Liability Remaining at Quarter Start * (= A - C) |
|---|---|---|---|---|---|
| 1 | 09/23/ 1996 | $223,850.00 | $5,431.00 | $5,431.00 | $218,419.00 |
| 2 | 12/15/ 1996 | 228,199.41 | 5,431.00 | 10,967.52 | 217,231.89 |
| 3 | 03/15/ 1997 | 232,633.32 | 5,431.00 | 16,611.62 | 216,021.70 |
| 4 | 06/15/ 1997 | 237,153.39 | 5,431.00 | 22,365.38 | 214,788.01 |
| 5 | 09/15/ 1997 | 241,761.28 | 5,431.00 | 28,230.94 | 213,530.34 |
| 6 | 12/15/ 1997 | 246,458.70 | 5,431.00 | 34,210.47 | 212,248.23 |
| 7 | 03/15/ 1998 | 251,247.39 | 5,431.00 | 40,306.18 | 210,941.21 |
| 8 | 06/15/ 1998 | 256,129.13 | 5,431.00 | 46,520.33 | 209,608.80 |
| 9 | 09/15/ 1998 | 261,105.72 | 5,431.00 | 52,855.22 | 208,250.50 |
| 10 | 12/15/ 1998 | 266,179.00 | 5,431.00 | 59,313.20 | 206,865.80 |
| 11 | 03/15/ 1999 | 271,350.86 | 5,431.00 | 65,896.66 | 205,454.20 |
| 12 | 06/15/ 1999 | 276,623.21 | 5,431.00 | 72,608.03 | 204,015.18 |
| 13 | 09/15/ 1999 | 281,998.00 | 5,431.00 | 79,449.80 | 202,548.20 |
| 14 | 12/15/ 1999 | 287,477.22 | 5,431.00 | 86,424.51 | 201,052.71 |
| 15 | 03/15/ 2000 | 293,062.90 | 5,431.00 | 93,534.74 | 199,528.16 |
| 16 | 06/15/ 2000 | 298,757.11 | 5,431.00 | 100,783.12 | 197,973.99 |
| 17 | 09/15/ 2000 | 304,561.96 | 5,431.00 | 108,172.34 | 196,389.62 |
| 18 | 12/15/ 2000 | 310,479.60 | 5,431.00 | 115,705.13 | 194,774.47 |
| 19 | 03/15/ 2001 | 316,512.22 | 5,431.00 | 123,384.28 | 193,127.94 |
| 20 | 06/15/ 2001 | 322,662.05 | 5,431.00 | 131,212.64 | 191,449.41 |
| 21 | 09/15/ 2001 | 328,931.37 | 5,431.00 | 139,193.10 | 189,738.27 |
| 22 | 12/15/ 2001 | 335,322.51 | 5,431.00 | 147,328.62 | 187,993.89 |
| 23 | 03/15/ 2002 | 341,837.83 | 5,431.00 | 155,622.22 | 186,215.61 |
| 24 | 06/15/ 2002 | 348,479.74 | 5,431.00 | 164,076.96 | 184,402.78 |
| 25 | 09/15/ 2002 | 355,250.70 | 5,431.00 | 172,695.98 | 182,554.72 |
| 26 | 12/15/ 2002 | 362,153.22 | 5,431.00 | 181,482.46 | 180,670.76 |
| 27 | 03/15/ 2003 | 369,189.86 | 5,431.00 | 190,439.66 | 178,750.20 |
| 28 | 06/15/ 2003 | 376,363.22 | 5,431.00 | 199,570.90 | 176,792.32 |
| 29 | 09/15/ 2003 | 383,675.96 | 5,431.00 | 208,879.56 | 174,796.40 |
| 30 | 12/15/ 2003 | 391,130.78 | 5,431.00 | 218,369.09 | 172,761.69 |
| 31 | 03/15/ 2004 | 398,730.45 | 5,431.00 | 228,043.00 | 170,687.45 |
| 32 | 06/15/ 2004 | 406,477.78 | 5,431.00 | 237,904.88 | 168,572.90 |
| 33 | 09/15/ 2004 | 414,375.64 | 5,431.00 | 247,958.37 | 166,417.27 |
| 34 | 12/15/ 2004 | 422,426.96 | 5,431.00 | 258,207.20 | 164,219.76 |
| 35 | 03/15/ 2005 | 430,634.72 | 5,431.00 | 268,655.17 | 161,979.55 |
| 36 | 06/15/ 2005 | 439,001.95 | 5,431.00 | 279,306.14 | 159,695.81 |
| 37 | 09/15/ 2005 | 447,531.76 | 5,431.00 | 290,164.06 | 157,367.70 |
| 38 | 12/15/ 2005 | 456,227.30 | 5,431.00 | 301,232.95 | 154,994.35 |
| 39 | 03/15/ 2006 | 465,091.80 | 5,431.00 | 312,516.91 | 152,574.89 |

## DISTRICT 65 PAYMENT SCHEDULE

| # Annual Interest: | 8.00% |
|---|---|
| Quarterly Rate: | 1.01943 |

\* Remainder at quarter start,
 but after payment in (B) is made.

### De Marco Calif Fabrics

#### Adjusted Lump Sum Option at 12/15/2005:

| | | |
|---|---|---|
| 1. | Original reduced withdrawal liability amount | $157,364 |
| 2. | Adjusted withdrawal liability amount (1 times 105.23%) | 165,594 |
| 3. | Minimum Funding Deficiency Allocation | 50,750 |
| 4. | Total (2 + 3) | $216,344 |

| Quarter | Payment Due Date | (A) Original Liability with interest # | (B) Payments Due at Quarter Start | (C) Cumulative Payments with interest # | (D) Liability Remaining at Quarter Start * (= A - C) |
|---|---|---|---|---|---|
| 40 | 06/15/ 2006 | 474,128.53 | 5,431.00 | 324,020.11 | 150,108.42 |
| 41 | 09/15/ 2006 | 483,340.85 | 5,431.00 | 335,746.82 | 147,594.03 |
| 42 | 12/15/ 2006 | 492,732.16 | 5,431.00 | 347,701.38 | 145,030.78 |

Total, if all payments had been timely made through 12/15/2006 | | 492,732.16 | 228,102.00 | 347,701.38 | 147,594.03 |

Actual payments through 12/15/2006    212,243.48

| | Over/Under Payments | Penalty Interest | |
|---|---|---|---|
| Delinquent payments, including penalty interest at 2/01/2006 | 15,858.52 | 2,932.74 | 18,791.26 |

Total lump sum payable 2/01/2006    166,385.29